973 A.2d 895

**Charles GROSS**

v.

**STATE of Maryland.**

**No. 1180, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

June 11, 2009.

322

Daniel H. Ginsburg, Greenbelt, for appellant.

Cathleen C. Brockmeyer (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, for appellee.

Panel: SALMON, ZARNOCH and RAYMOND G. THIEME, JR. (Ret. Specially Assigned), JJ.

SALMON, J.

On July 12, 2000, Charles Gross ("Gross") entered an ABA plea [1] to the charge of possession with intent to distribute 50 grams or more of cocaine. In exchange for his plea, the State entered a *nolle prosequi* to the charges of possession of PCP with intent to distribute, possession of a firearm for use in drug trafficking, and other lesser crimes. The Circuit Court for Prince George's County accepted the plea and, pursuant to

1. An ABA plea is an agreement by the sentencing judge, the defendant, and the prosecutor as to what the maximum sentence will be if the plea is accepted. In the subject case, the ABA plea agreement specified the exact sentence that would be imposed. In some ABA plea agreements, however, the judge, prosecutor and the defendant simply agree that if the plea is accepted the sentence imposed will not exceed a specified number of days or years.

the plea agreement, sentenced Gross, on November 20, 2000, to five years imprisonment. No period of probation was imposed.

Gross did not file a petition for leave to appeal to this Court. Instead, he waited more than six years to take any action concerning his conviction. On February 7, 2008, he filed a petition seeking a *writ of error coram nobis* in the Circuit Court for Prince George's County. He alleged, *inter alia,* that he was denied due process of law because the record failed to show that his plea was entered knowingly and intelligently.

Gross also alleged in his petition that he had recently been convicted in federal court of "conspiracy to distribute and possession with intent to distribute 50 grams or more of crack cocaine" and was awaiting sentencing. This presented a problem because if his "improper" conviction in Prince George's County were allowed to stand he would be "scored as a career offender" under federal sentencing guidelines, which meant that the range of his sentences would be between 262–327 months. According to Gross, if his conviction in the subject case were set aside, the guidelines range "would fall dramatically to 140–175 months."

Following a hearing, the circuit court denied Gross's *coram nobis* petition. Gross noted this appeal in which he argues that the circuit court erred in denying his petition because his guilty plea in the underlying criminal case was not knowingly and voluntarily entered. He based that contention on the fact, that prior to the acceptance of the guilty plea, the plea judge did not explain to him the elements of the offense to which he was pleading guilty, nor was there a statement on the record by Gross's counsel that he had explained the elements of the offense to his client. Appellant also contends that his guilty plea was invalid because, prior to accepting the plea, the court failed to advise him that if he had gone to trial he would have been able to invoke his right against self-incrimination.

The State asks us to affirm the circuit court's denial of the *coram nobis* petition for three independent reasons. First,

the State contends that Gross waived his right to *coram nobis* relief by failing to file, within 30 days of the date his sentence was imposed, a petition for leave to appeal to this Court. Second, the State argues that, regardless of the merits of Gross's complaint about the advice he was given prior to the court's acceptance of the ABA plea, Gross failed to prove entitlement to relief because, at the *coram nobis* hearing, he put on no evidence demonstrating that he incurred any collateral consequences as a result of his Prince George's County conviction. Third, according to the State, the record demonstrates that Gross's guilty plea was made knowingly, intelligently, and voluntarily.

## I.

### A.  The *Coram Nobis* Hearing

Gross's counsel introduced into evidence three exhibits, viz: 1) the transcript of the July 12, 2000 proceedings at which Gross's plea of guilty was accepted; 2) the transcript of the sentencing hearing of November 20, 2000; and 3) an affidavit, signed by Gross.

Gross's affidavit read as follows:

During my guilty plea proceeding of July 12, 2000, neither the trial judge nor my lawyer advised me of the elements of the charge to which I pled guilty. Also, neither the trial judge nor my attorney told me that, if I went to trial, I could testify or refuse to testify.

My trial attorney never advised me of the above constitutional defects in my guilty plea hearing. Trial counsel also did not: (1) consult with me about my option of seeking permission to appeal; or (2) file an Application [for] Leave to Appeal in order to challenge the knowing and intelligent nature of my guilty plea. Furthermore, at the end of my sentencing hearing on November 20, 2000, the trial judge told me that I could appeal my sentence within 30 days; the judge did not, however, inform me that I could request permission to appeal from my guilty plea itself. Therefore, I did not understand that I could apply for leave to appeal

from my guilty plea. If I had known that I could challenge, via an Application for Leave to Appeal, the knowing and intelligent nature of my guilty plea, then I would have raised the above claims in an Application.[2]

The transcript of the hearing at which the ABA plea was accepted shows that appellant was represented by Richard Collins, Esquire, the law partner of Joseph Vallario, Jr., the attorney who had negotiated the ABA plea. The plea was accepted by the Honorable Sheila R. Tillerson–Adams. Questioning by the judge revealed that at the time of sentencing Gross was 26 years old and was a high school graduate who could read, write and understand the English language. At the time the plea was accepted, Gross was taking no medication and was in good health both physically and mentally, and was not under the influence of any drugs or alcohol. During the court's questioning of Gross, the following exchange occurred:

> THE COURT: Have you gone over the charges with your attorney in [the subject case] and the elements of the offenses that you're charged with?

> THE DEFENDANT: Yes.

---

**2.** The final sentence in Gross's affidavit strains credulity. The police found approximately 390 grams of cocaine in Gross's bedroom. In other words, he was caught "red handed." Under the ABA plea agreement, he received the lowest possible sentence (5 years) for the offense to which he pleaded guilty. Moreover, the record of the sentencing hearing showed that about two weeks before he was sentenced in Prince George's County he pleaded guilty in Calvert County to the crime of Distribution of Narcotics "Large Amounts" in violation of Md.Code Ann. (2006) Art. 27, § 286(f). As a result of the Calvert County conviction, he was sentenced to a fifteen-year term of incarceration, with 10 years suspended and the remaining 5 years to be served without parole. The sentence was to run concurrently with the one imposed in the subject case. If he was successful in setting aside the Prince George's County conviction, he would still have been required to serve ten years based on the Calvert County conviction. Moreover, the statement of facts supporting the ABA plea showed that if the plea were set aside the State had a very good chance of convicting appellant of several other serious charges that, due to his guilty plea, were *nol prossed.*

THE COURT: It is my understanding that you're entering a plea to Count I, Possession with Intent to Distribute Cocaine, mandatory amounts. Is that correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you entering this plea voluntarily and as a result of your own decision?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have you been provided with a copy of the charging document, discussed the charges and possible offenses[sic] with your attorney?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you completely satisfied with the service of your attorney and the way hes [sic] handled your defense thus far?

THE DEFENDANT: Yes, ma'am.

THE COURT: Has your attorney done everything that you've asked with regard to conducting your defense?

THE DEFENDANT: Yes, ma'am.

(Emphasis added.)

Before accepting the plea, Judge Tillerson–Adams also told Gross about various rights that he was giving up by pleading guilty. She told Gross, *inter alia*, that he had a right to a trial before a jury made up of twelve jurors, that if he had elected a jury trial he would have had a right to help pick the jury, and that the jury could not find him guilty unless all twelve jurors unanimously concluded, beyond a reasonable doubt, that he was guilty. The court also advised appellant that if he elected to do so, he had a right to a trial before a judge who could not find him guilty unless the evidence showed that he was guilty beyond a reasonable doubt. Gross said that he understood that he was giving up all those rights.

In advising Gross of the rights just mentioned, and several others, Judge Tillerson–Adams did not tell Gross that if he had gone to trial he would have been able to invoke his right against self-incrimination.

Gross then told the judge that he was pleading guilty because he was guilty. Prior to accepting the guilty plea, the prosecutor read into the record the factual predicate for the plea, saying:

Your Honor, had this matter gone to trial, witnesses would have testified to the following. There was an investigation that involved both 8506 Grand Haven Avenue and 8508 Grand Haven Avenue, two townhouses next to each other, Upper Marlboro, Prince George's County, Maryland.

As a result of the investigation, search warrant was executed simultaneously on 8506 and 8508. Mr. Charles Gross was the owner and/or renter is more appropriate of 8508 Grand Haven Avenue. Seized within the house and specifically within the bedroom of Charles Gross was approximately 390 grams of cocaine spread within the bedroom, the closet, etc. There was also PCP found in the refrigerator. There were three other residents, four other residents of the house.

One hundred and fourteen point three milligrams of PCP plus an additional 11.58 grams of PCP was found in the refrigerator.

Also found was $21,339, again in various parts of the house in different safes. There was a loaded gun found in Mr. Gross's bedroom in his dresser drawer portion, pages, pagers, I'm sorry, and three scales were found in the house, two in the kitchen and one in the garage. Various documents tying Mr. Gross to the house.

The various drugs were analyzed by a certified chemist of the Prince George's County Police, I'm sorry, a certified chemist of the Prince George's County Police Laboratory and the amounts were found to be in fact cocaine a Schedule II substance, and PCP a Schedule II substance, and also marijuana a Schedule I substance.

All events occurred in Prince George's County, Maryland and that would be what the witnesses would have testified to.

After hearing the proffer the following transpired:

THE COURT: Mr. Collins and Mr. Gross?

MR. COLLINS: Yes?

THE COURT: Any additions or corrections to the facts of this case?

MR. COLLINS: My client indicates that he would differ on a couple of issues that really wouldn't go to the heart of the count that he's pleading to such as the possession of the gun. It wasn't found in his drawer.

THE COURT: Okay.

MR. COLLINS: But essentially we believe the State would present enough evidence to convince Your Honor or a jury that he was guilty.

THE COURT: On the possession with intent to distribute?

MR. COLLINS: Yes.

THE COURT: Okay. Okay then, now, Mr. Gross the plea agreement as I understand it is plea to Count I, Possession with Intent to Distribute Mandatory Amounts. The plea would be five years without the possibility of parole and the PSI would be ordered. It would be a straight five year sentence. And that's it. Other than that, is that your understanding of the plea agreement?

MR. COLLINS: It is.

The court next made sure that Gross understood the sentence that would be imposed pursuant to the ABA plea and advised Gross that the conviction in the subject case would result in a violation of the term of probation imposed due to a conviction in a Calvert County case. Appellant said he understood both the plea and its consequences. Next, the court engaged Gross in the following colloquy:

THE COURT: Okay. Have you understood all of my questions?

THE DEFENDANT: Yes, I did.

THE COURT: And were all of your answers truthful?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that by entering a plea of guilty you're giving up your right to a direct appeal of

this case but you will have a right to ask for leave to appeal to the Court of Special Appeals.

THE DEFENDANT: Yes, ma'am

THE COURT: Okay, anything further and did you want to consult with your attorney before I accept your plea?

MR. COLLINS: Any questions?

THE DEFENDANT: No, ma'am.

THE COURT: Okay then. The Court finds that the plea is freely, voluntarily, and understandably made; finds jurisdiction in the factual basis as set forth by the State. Madam Clerk (unintelligible) to reflect the Defendant withdraws any previously entered pleas of not guilty and enters a plea of guilty to Count I of this indictment, Possession with Intent to Distribute Cocaine, Mandatory Amounts.

(Emphasis added.)

On November 20, 2000, the court sentenced appellant in accordance with the plea amount. After sentencing, the court advised appellant as follows:

THE COURT: ... You have 30 days to appeal this sentence, 30 days to ask for a three judge panel, and 90 days to file a motion for reconsideration.

(Emphasis added.)

The court then asked Gross whether he understood these rights and he responded in the affirmative.

At the *coram nobis* hearing, Gross's counsel called Joseph Vallario, Jr., the attorney who negotiated the plea agreement and the attorney who represented Gross at his sentencing hearing back in 2000. Mr. Vallario testified that, although Mr. Collins represented Gross at the hearing at which the plea was accepted, Gross was "definitely" his client. On direct-examination he admitted that he had no conversation, whatsoever, with Mr. Gross concerning his rights once the plea was accepted. On cross-examination, Anthony McCarthy, Esquire, the prosecutor, and Mr. Vallario had the following brief exchange:

Q [MR. McCARTHY]: Okay. Therefore, your normal procedure would have been, since he was your client, to have gone over the charges with him and told him what they meant?

MR. GINSBURG [COUNSEL FOR GROSS]: Objection.

THE COURT: Overruled.

THE WITNESS: I'm sure—

BY MR. MCCARTHY:

Q You went over the elements with him?

A Yes.

The circuit court denied Gross's petition for *coram nobis* relief.

## B.   The State's Waiver Argument

■ The State, *citing Holmes v. State*, 401 Md. 429, 932 A.2d 698 (2007), contends that appellant waived his right to *coram nobis* relief.   The *Holmes* Court said:

[I]f an individual who pleads guilty, having been informed of his right to file an application for leave to appeal from his conviction and sentence, does not file such an application for leave to appeal, a rebuttable presumption arises that he has waived the right to challenge his conviction in a subsequent coram nobis proceeding.   Because Thomas did not rebut the presumption of waiver, nor demonstrate "special circumstances" to excuse his failure to file an application for leave to appeal, his right to challenge his conviction and sentence through a writ of error coram nobis petition was waived.

*Id.* at 445–46, 932 A.2d 698.

It is undisputed that Gross never filed a petition for leave to appeal to this Court.   And, as already mentioned, Judge Tillerson–Adams told appellant immediately after she accepted his plea that he had "a right to ask for leave to appeal to the Court of Special Appeals."   Gross said in response that he understood that right.   After he was sentenced, appellant was told that he had "thirty-days to appeal this sentence, thirty-days to ask for a three-judge panel, and ninety-days to file a

motion for reconsideration." (Emphasis added). Once again, appellant said that he understood those rights.

The State argues that because Gross was informed that he could file an application for leave to appeal but did not do so, he waived his right to seek a *writ of error coram nobis.* Gross, on the other hand, emphasizes that at sentencing he was told only that he had "thirty-days to appeal this sentence," but was not told that he had a right to file a petition for leave to appeal his conviction. And, in regard to what was said at the plea hearing, he was told that he had a "right to ask for leave to appeal to the Court of Special Appeals" but was never told that he had only thirty days to make such an application.

We hold that the information given to Gross in this case on the date the plea was accepted and later at the time of sentencing was not sufficient to constitute a waiver of his right to later file a petition for *coram nobis* relief. Technically, appellant did not have a right to appeal "his sentence" as he was told on the date sentence was imposed. He had a right to file a petition seeking leave to appeal the conviction and sentence. *Holmes*, 401 Md. at 445–46, 932 A.2d 698. Moreover, at no point was he told that he had thirty days to file a petition for leave to appeal.

The plea in this case was taken long before *Holmes* was decided. The circumstances of this case demonstrate the importance of telling any defendant who pleads guilty that he or she has "thirty days from the date of sentencing to file a petition asking the Maryland Court of Special Appeals for leave to appeal the sentence and the conviction." If such advisement is given, *coram nobis* relief will be deemed waived if: 1) the defendant does not file a petition for leave to appeal within 30 days, and 2) no "special circumstances" exist. *See Holmes*, 401 Md. at 445–46, 932 A.2d 698.

### C. Failure to Prove Collateral Consequences

The State argues that this Court should affirm the court's denial of *coram nobis* relief because Gross failed to

prove that he had incurred any substantial collateral consequences as a result of the guilty plea.

■ As all parties agree, in order to be entitled to *coram nobis* relief, the petitioner must prove that he or she is "suffering or facing significant collateral consequences from the conviction" from which he seeks relief. *See Skok v. State,* 361 Md. 52, 79, 760 A.2d 647 (2000).

In his brief, Gross argues:

Although Appellant has long since served his sentence in this case, he is suffering significant collateral consequences as a result of his conviction for possession with intent to distribute cocaine—mandatory amounts. Appellant currently is serving a sentence in a federal drug conspiracy case. As a result of his conviction in this case, Appellant was scored as "career offender" under Section 4B1.1 of the United States Sentencing Guidelines; consequently, his federal sentence was premised on a guidelines range of 262 months to 327 months. If his wrongful conviction in this case were vacated, however, then his guidelines range would fall dramatically to 140 months to 175 months. *See Parker [v. State],* 160 Md.App. [672] at 687 [866 A.2d 885 (2005)] (holding that appellant stated cause of action for *coram nobis* relief by alleging that he faced longer term of imprisonment under federal Sentencing Guidelines due to his guilty pleas, which were not entered knowingly and intelligently, in three state cases).

Gross does not say in his opening or reply brief, nor does the record reveal, what sentence was actually imposed in federal court. At oral argument, however, Gross's counsel advised us that in July 2008, his client received a 188 month sentence in the federal case. The sentence was below federal sentencing guidelines because he cooperated with the Government and for other reasons concerning bad prison conditions he experienced during pre-trial detention.

The State points out, accurately, that although Gross alleged in his petition for *coram nobis* relief that he was suffering significant collateral consequences as a result of his

conviction, he failed to <u>prove</u> such collateral consequences at the post-conviction hearing. Mere allegations, according to the State, are insufficient and therefore Gross failed to sustain his burden on this issue.

If the argument that the State now makes had been put forth at the hearing on Gross' petition for *coram nobis* relief, the State's argument might well have been grounds for an affirmance, assuming the court did not allow Gross to reopen his case. But this argument was not raised or decided below. Moreover, if the issue had been raised in the circuit court there is a good chance that the *coram nobis* Court would have granted Gross permission to reopen. Thus, we hold that this issue is waived. *See* Maryland Rule 8–131(a) (ordinarily, except for jurisdictional issues, an appellate court will not decide any other issue that is neither raised or decided in the circuit court). *See also Rivera v. State,* 180 Md.App. 693, 715, 952 A.2d 396, *cert. granted,* 406 Md. 112, 956 A.2d 201 (2008); *Abrams v. State,* 176 Md.App. 600, 625, n. 16, 933 A.2d 887 (2007).

## II.

### Analysis of the Merits of Appellant's Contentions

### A. *Failure to Advise Appellant as to the Nature of the Charges to Which He Was Pleading Guilty*

Relying on *Bradshaw v. Stumpf,* 545 U.S. 175, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005), and *Abrams v. State, supra,* Gross contends that his guilty plea was constitutionally invalid because Judge Tillerson–Adams failed to either: 1) tell him the elements of the charge to which he was admitting guilt, or 2) obtain assurance on the record from his counsel that he (defense counsel) had explained to Gross the elements of the crime.

Before discussing, in detail, the merits of appellant's argument, it is useful to first analyze the cases of *State v. Priet* 289 Md. 267, 424 A.2d 349 (1981), and *Marshall v. Lonberger,* 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). The *Priet* case

involved three pleas accepted by circuit court judges in three separate cases. *Id.* at 269, 424 A.2d 349. In all three cases, the convictions were reversed by this Court (one reported and two unreported decisions) because the guilty pleas were accepted without a showing, on the record, of a discussion with the defendant concerning the nature of the charges. *Id.* at 271, 273–274, 424 A.2d 349. In the reported decision by this Court, *Priet v. State*, 45 Md.App. 1, 3, 410 A.2d 1107 (1980), we had held that a plea judge could not accept a guilty plea without knowing what was told to the defendant. 45 Md.App. at 3, 410 A.2d 1107. The Court of Appeals consolidated the cases, granted *certiorari*, and reversed the decisions in all three cases. 289 Md. at 293, 424 A.2d 349.

In *Priet*, each of the three defendants was represented by counsel when their pleas were accepted and each defendant acknowledged discussing the case with his counsel. *Id.* at 290, 424 A.2d 349. Nevertheless, prior to accepting the plea, the court did not discuss the nature of the charge with the defendants and the "record did not particularize the precise basis of the [appellees'] claimed knowledge that [they] understood the nature of the offense." *Id.*

The Court of Appeals in *Priet* upheld the validity of the guilty pleas entered by all three defendants, saying:

Consistent with the principles espoused in the majority of these state and federal cases, and with the rationale underlying our decision in *Davis* [*v. State*, 278 Md. 103, 361 A.2d 113 (1976) ], rule 731(c) [predecessor to the current 4–242(c) ] does not impose any ritualistic or fixed procedure to guide the trial judge in determining whether a guilty plea is voluntarily and intelligently entered.

*Id.* at 287–88, 424 A.2d 349.

Instead, the plea was to be viewed under the "totality of the circumstances as reflected in the entire record." *Id.* at 276, 424 A.2d 349 (*quoting Davis v. State*, 278 Md. at 103, 109, 361 A.2d 113 (1976)). The *Priet* Court, speaking specifically to the issue of whether a detailed recitation by the court of the

elements of the crime was necessary for a guilty plea to be voluntarily and intelligently entered, stated:

> The Rule [731(c)] does not require that the precise legal elements comprising the offense be communicated to the defendant as a prerequisite of the valid acceptance of his guilty plea. Rather by its express terms, the rule mandates that a guilty plea not be accepted unless it is determined by the court, after questioning of the defendant on the record, that the accused understands the 'nature' of the charge. This of course, is an essential requirement of the rule and must be applied in a practical and realistic manner. It simply contemplates that the court will explain to the accused, in understandable terms, the nature of the offense to afford him a basic understanding of its essential substance rather than of the specific legal components of the offense to which the plea is tendered.

289 Md. at 288, 424 A.2d 349.

> The Court then said:

> [T]he observation made by the Supreme Court in *Henderson* [*v. Morgan*, 426 U.S. 637, 647, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976)], that unless the contrary clearly appears from the record (as was true in *Henderson* ), "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." . . . The test, as we have indicated, is whether, considering the record as a whole, the trial judge could fairly determine that the defendant understood the nature of the charge to which he pleaded guilty.

> *Id.* (citation omitted). *See also Rivera*, 180 Md.App. at 711–12, 952 A.2d 396.

(discussing *Priet* ).

In *Marshall v. Lonberger, supra,* decided about two years after *Priet,* the Supreme Court once again set forth the rule to be applied when deciding if a guilty plea was knowingly entered. 459 U.S. 422, 436, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). In deciding that issue, Justice Rehnquist, speaking for

the majority, made it clear that, in most cases, the court could rely upon the presumption mentioned in *Henderson v. Morgan*, 426 U.S. 637, 647, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), i.e. that defense counsel routinely explain to their clients "the nature of the offense in sufficient detail to give to the accused notice of what he was being asked to admit." 459 U.S. at 436, 103 S.Ct. 843. Lonberger was convicted of murder by an Ohio trial court. The Ohio prosecutor introduced evidence that, three years before the date that the Ohio murder was committed, the defendant had pled guilty in Illinois to the charge of attempted murder. *Id.* at 426, 103 S.Ct. 843. In a later *habeas corpus* action, Lonberger contended that he did not realize, when he pleaded guilty in the Illinois proceeding, that he was pleading guilty to attempted murder and therefore evidence of the Illinois conviction should not have been admitted in his Ohio trial. *Id.* at 432–33, 103 S.Ct. 843. The Supreme Court said:

It is well established that a plea of guilty cannot be voluntary in the sense that it constitutes an intelligent admission that the accused committed the offense unless the accused has received "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Smith v. O'Grady*, 312 U.S. 329, 334 [61 S.Ct. 572, 85 L.Ed. 859] (1941), quoted in *Henderson v. Morgan, 426 U.S., at 645*[, 96 S.Ct. 2253]. In *Henderson v. Morgan*, we went on to make the following observations:

Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. <u>Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.</u> *Id.* at 647[, 96 S.Ct. 2253].

Applying this standard to the factual determinations arising from the state-court proceedings which were 'fairly

supported by the record' within the meaning of *U.S.C. § 2254(d)*, we disagree with the Court of Appeals for the Sixth Circuit in its conclusion that respondent's plea to the Illinois charge was not 'voluntary' in the constitutional meaning of that term. We think that the application of the principles enunciated in *Henderson v. Morgan, supra*, lead inexorably to the conclusion that the plea was voluntary. We think a person of respondent's intelligence and experience in the criminal justice system would have understood, from the statements made at the sentencing hearing recorded in the transcript before us, that the presiding judge was inquiring whether the defendant pleaded guilty to offenses charged in the indictment against him. This is evident from the references in the proceeding by the judge to the fact the respondent's counsel's stipulation that the indictment sustained the plea of guilty. *Supra, at 427–28.* Under *Henderson*, respondent must be presumed to have been informed, either by his lawyers or at one of the presentencing proceedings, of the charges on which he was indicted. Given this knowledge of the indictment and the fact that the indictment contained no other attempt charges, respondent could only have understood the judge's reference to 'attempt on Dorothy Maxwell, with a knife' as a reference to the indictment's charge of attempt to kill. It follows, therefore, both that respondent's argument that his plea of guilty was not made knowingly must fail, and that the admission in the Ohio murder trial of the conviction based on that plea deprived respondent of no federal right. *Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967).* The judgement of the Court of Appeals is accordingly reversed.

459 U.S. at 436–38, 103 S.Ct. 843 (emphasis added).

It is clear that as of 2000, when Gross's plea was accepted, Judge Tillerson–Adams complied with the dictates of *Priet* and *Lonberger* because the court was entitled to presume that Gross's counsel explained to him the charges to which he pled guilty in sufficient detail to give Gross notice of what he was being asked to admit. *See Rivera*, 180 Md.App. at 713, 952 A.2d 396, (holding that, as of the time the plea was accepted

[i.e., pre Bradshaw] the plea court could presume that the defendant knew the elements of the crime because the defendant told the court, on the record, that he had discussed the charges with his attorney). In this regard, it is important to stress that prior to accepting the plea, Gross told Judge Tillerson–Adams that he: 1) had been provided with a copy of the charging document; 2) had "gone over" the charges and the elements of the offenses with his lawyer; 3) had "discussed" the charges with his attorney with whom he was "completely satisfied," and 4) he was pleading guilty to the charges in Count I because he was guilty of that charge.

In *Bradshaw v. Stumpf*, 545 U.S. at 178, 125 S.Ct. 2398, one of the questions presented to the Supreme Court was whether the United States Court of Appeals for the Sixth Circuit had erred when it held that the defendant, Stumpf, had not entered his guilty plea to "aggravated murder" voluntarily and knowingly. The Sixth Circuit had ruled that Stumpf, who was not a principal in the first-degree, had pleaded guilty to "aggravated" murder without understanding that a specific intent to cause death was a necessary element of that crime under Ohio law.

The Supreme Court reversed the Sixth Circuit's decision in *Stumpf v. Mitchell*, 367 F.3d 594 (6th Cir.2004), and held that the guilty plea was knowing and voluntary because at the plea hearing Stumpf's attorneys had represented to the court that they had explained the elements of "aggravated" murder to their client. In reaching that conclusion, and speaking to the requirement that a guilty plea must be made voluntarily, knowingly, and intelligently, the Supreme Court said:

> In [appellant]'s plea hearing, his attorneys represented on the record that they had explained to their client the elements of the aggravated murder charge; [appellant] himself then confirmed that this representation was true. While the court taking a defendant's plea is responsible for ensuring a record adequate for any review that my be later sought, we have never held that the judge must himself explain the elements of each charge to the defendant on the record. Rather, the constitutional prerequisites of a valid

plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel. *Cf. Henderson,* [426 U.S. at 647, 96 S.Ct. 2253] (granting relief to a defendant unaware of the elements of his crime, but distinguishing that case from others where "the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused"). Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty.

545 U.S. at 183, 125 S.Ct. 2398 (emphasis added) (internal citations omitted).

Relying, presumably, on the fact that the letters "cf" appear before the cite to *Henderson v. Morgan,* Gross contends that the presumption mentioned in *Henderson* can no longer be relied upon by a plea judge.

In *Abrams,* this Court discussed *Bradshaw* and *Priet* in detail. *Abrams,* 176 Md.App. at 620–24, 933 A.2d 887. In the *Abrams* case, the defendant pled guilty to the crime of "uttering." Several years later, he filed a *coram nobis* petition in which he contended, *inter alia,* that his conviction should be set aside because the plea court had failed to explain to him the elements of the uttering charge. *Id.* at 618–19, 933 A.2d 887. Abrams asserted that the *Bradshaw* decision required that he be advised of the elements of the crime on the record and that no such advice had been given to him. We ultimately held that the plea court gave a sufficient explanation of the crime of uttering and therefore rejected Abrams's contention. In doing so, however, we cited *Bradshaw,* for the following proposition:

No longer can a trial judge rely on the presumption that defense counsel has sufficiently explained to the defendant the nature of the defense to which he or she is entering a guilty plea. Instead, the trial judge must either (1) explain

to the defendant on the record the nature of the charge and the element of the crime, or (2) obtain on the record a representation by defense counsel that the defendant has been "properly informed of the nature and element of the charge to which he [or she] is pleading guilty." [14]

Footnote 14 reads:

The Supreme Court did not address the question of whether a representation *by the defendant* on the record that defense counsel advised him or her of the nature and elements of the crime will pass constitutional muster. Since *Bradshaw,* lower courts have been divided on this issue. *Compare Jones v. State,* 936 So.2d 993, 996–97 (Miss.Ct. App.2006) (holding a guilty plea invalid where the defendant admitted in writing that his attorney had explained to him the nature and elements of the charge to which he was pleading guilty, but the court never asked defense counsel at the plea hearing whether he had explained the elements to the defendant) *with State v. Reid,* 277 Conn. 764, 894 A.2d 963, 976 (2006) (upholding a guilty plea because the defendant advised the court at the plea hearing that defense counsel had gone over the law with the defendant as it related to the subject offense).

176 Md.App. at 622–23, 933 A.2d 887.

Gross reads *Bradshaw* and *Abrams* to mean that a plea is fatally defective if one of the two alternatives mentioned in *Abrams* is not utilized by the plea judge. The State, on the other hand, maintains that the excerpt from *Abrams,* upon which Gross relies, is mere dicta inasmuch as the *Abrams* Court held that the circuit court's explanation of the charge to which the defendant pled guilty was adequate. Alternatively, the State relies on *State v. Reid,* 277 Conn. 764, 894 A.2d 963, 976 (2006), which was cited in footnote 14 in *Abrams,* along with *Desrosier v. Bissonnette,* 502 F.3d 38 (1st Cir.2007), to support their argument that what was done in the case *sub judice* was sufficient to show that Gross's guilty plea was entered "voluntarily and knowingly."

The present case requires us to address the question, which was not at issue in *Bradshaw* but was mentioned, in footnote

14 of the *Abrams* opinion. The precise question is: whether a representation to the plea judge by the defendant that his counsel had discussed with him the elements of the charges he faces will suffice to show that the defendant's plea was voluntarily and knowingly entered.[3]

### III.

Maryland Rule 4–242(c) sets forth the standards controlling when a guilty plea may be accepted by a judge. The rule provides, in relevant part: "The court may accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court ... that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea." Under this rule, there are four basic prerequisites to a valid guilty plea. First, the court must determine that the defendant is entering the plea "voluntarily." Second, the defendant must have an "understanding of the nature of the charge" to which he is pleading guilty. Third, the defendant must understand "the consequences of the plea." Fourth, the record must show the "factual basis for the plea." Rule 4–242(c) requires that the court make all of these findings based on "an examination of the defendant on the record in open court." (Emphasis added.)

Count 1 of the indictment[4] to which appellant pled guilty read:

---

**3.** It is worth noting that in his affidavit filed in the *coram nobis* court, appellant never denied that when he pled guilty he fully understood the charge to which he was pleading guilty. That fact distinguishes this case from most others where the "knowing" issue has arisen. The wording of his affidavit indicates only that at the hearing where the plea was accepted neither his counsel nor the court advised him of the elements of the charge to which he pleaded guilty. The careful wording of Gross's affidavit does not contradict Mr. Vallario's testimony, given to the *coram nobis* court, that he (Vallario) did discuss the elements of the charges with Gross prior to the entry of the guilty plea.

**4.** The indictment at issue is not in the *coram nobis* record. But this Court has the discretion to take judicial notice of facts, such as the

... Charles Sharon Gross ... late of Prince George's County aforesaid, on or about the 6th day of March, two thousand, at Prince George's County aforesaid, unlawfully did possess a certain controlled dangerous substance, to wit: Cocaine commonly referred to as Crack, in the amount of 50 grams or more in sufficient quantities to reasonably indicate under all circumstances an intent to distribute the said controlled dangerous substance, in violation of **Article 27, Section 286(f)(1)(iii)** of the Annotated Code of Maryland 1957 edition, as amended, and against the peace, government and dignity of the State. **(Possession of CDS— Mandatory Amounts).**

▮ In determining whether a defendant knowingly pled guilty, we must consider the totality of the relevant circumstances. *Hanson v. Phillips,* 442 F.3d 789, 793 (2d Cir.2006). One of the relevant circumstances is whether the charge to which a guilty plea is entered is simple or complex. The more complex the charge, the more care the court must take to ensure the defendant understands the nature of the charges to which he or she is pleading guilty. *See United States v. James,* 210 F.3d 1342, 1345 (11th Cir.2000); *United States v. DePace,* 120 F.3d 233, 237 (11th Cir.1997); *United States v. Van Buren,* 804 F.2d 888, 892 (6th Cir.1986). The charge set forth in Count I of the indictment to which Gross pled guilty is straight forward and simple.

Gross reads *Abrams* as:

Explicitly require[ing] that the record of the guilty plea hearing contain either an explanation of the elements of the crime or defense counsel's representation that he advised the defendant of those elements.

He also reads *Bradshaw* and *Abrams* to apply retroactively to guilty pleas—such as his—which were accepted long before

---

contents of an indictment filed in the circuit court, because such information is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* Md. Rule 5–201(b). *See also Dashiell v. Meeks,* 396 Md. 149, 174–77, 913 A.2d 10 (2006).

either the *Bradshaw* or *Abrams* case were decided. Gross cites *Jones v. State,* 936 So.2d 993 (Miss.Ct.App.2006), to support his position that we should read *Bradshaw* to mean that a trial judge can no longer rely on a representation by a defendant that his counsel has discussed the elements of the charges with his client.

The *Jones* case, decided <u>post</u> *Bradshaw,* had its origin when Daryl Jones was indicted by a Marshall County, Mississippi, grand jury for sexual battery of a minor. 936 So.2d at 994. Jones subsequently signed a petition to enter a guilty plea "to the charge of sexual battery as set forth" in the indictment. *Id.* at 996. Jones's petition read in relevant part:

I plead guilty to the charge(s) of Sexual Battery as set forth in the indictment in this case number.

My lawyer had advised me of the nature of the charge(s) and the possible defenses that I may have to the charge(s).

I understand that by pleading guilty I am admitting that I did commit the crime charged in the indictment. . . .

My lawyer has advised me of the elements of the charge to which I am pleading. I submit that all the elements are proven by [the] true facts. Therefore, I am guilty and ask the Court to accept my plea of guilty.

Prior to accepting the plea, the prosecutor was not asked to show that there was a factual basis for the offense. *Id.* Moreover, no one advised Jones, on the record, as to the elements of the crime, nor was Jones' counsel asked on the record if he had explained the elements of the crime to his client. *Id.* The plea judge did, however, "examine Jones to ensure that he had reviewed the petition to plead guilty with his attorney and that the signature on the petition was authentic." *Id.*

Jones's plea was accepted, but about a year after he was sentenced, he filed a petition for post-conviction relief that the circuit court denied. *Id.* at 994. Jones appealed that denial to the Mississippi Court of Appeals. *Id.* The issue addressed in *Jones* was whether the requirements set forth in *Bradshaw* (that the record accurately reflect that the nature of the

charges and the elements of the crime were explained to the defendant by his own competent counsel or by the court) were met. The State claimed the requirements were met by "form language in a plea petition" signed by the defendant and his attorney containing "counsel's assurances that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty." In *Jones,* the plea petition did not set forth the elements of the offense and the plea judge did not confirm counsel's representation (made in the plea petition) as to the advice given. *Id.* at 997.

The Mississippi Court of Appeals said:

> We cannot conclude, based on the emphasis in *Bradshaw v. Stumpf* that the record should affirmatively reflect the defendant's knowledge, that it is sufficient that the boilerplate language in a plea petition include a statement that the elements of the offense were explained to the accused, especially when the elements are not set out on the petition and the assurance is just one of many on the form. The United States Supreme Court was not adding a requirement of notice of the elements of the offense to a meaningless checklist, compliance to be noted in any manner no matter how subjectively uncertain. <u>*Stumpf* requires a reliable indication that the defendant has had the elements of his offense explained.</u> To the extent standard forms are used for guilty pleas, the trial judges who take the pleas should assure that the record at the hearing reveals the accuracy of a form statement that the elements were explained. The forms to some extent are a back-up to matters that a trial judge might overlook. *Stumpf* is not the first judicial precedent to imply that the judge taking the guilty plea also needs a checklist to assist in questioning the accused. On that checklist should be assurances on the elements of the offense.

*Id.* at 998 (emphasis added).

The *Jones* case is distinguishable from the case *sub judice* in several respects. First, Jones claimed that prior to pleading guilty "he was not informed of the elements of the

charges." *Id.* at 995. The appellant in this case has never made such a claim. *See* n. 2, *supra.* And, it would have been difficult for Gross to have plausibly made such a claim in light of the fact that 1) Mr. Vallario testified before the *coram nobis* court that he did go over the elements of the charge with appellant, 2) the appellant's *coram nobis* counsel never challenged Mr. Vallario's testimony, by cross-examination or in any other manner, and 3) appellant told the plea court that his counsel had "gone over" the charges in the indictment and the "elements of the offenses" with him. Second, the main thrust of the *Jones* opinion was that sworn assertion of facts in a written plea petition does not provide a "reliable indication that the defendant had had the elements of his offenses explained." *Id.* Here, the plea judge did not rely on a written statement nor would it have been proper, under Md.Rule 4–242(c), for her to have done so. Instead, in a face-to-face encounter, the court questioned appellant and received his assurance that all the answers he gave were truthful, which, of course, included his answers concerning what his attorney had done. Nothing in the *Jones* case indicates that the procedure followed by the plea court in this case would not have fulfilled the requirements of *Bradshaw.*

In *State v. Reid, supra,* another post-*Bradshaw* decision, the Supreme Court of Connecticut was asked to decide whether *Reid,* when he entered his guilty plea, was adequately apprised of the nature of the criminal charge to which he pled guilty. 894 A.2d at 963. The issue arose several years after Reid pled guilty to assault in the second degree, when Reid filed a motion to withdraw that plea. *Id.* at 968–69. The impetus for the motion was that Reid was facing adverse collateral consequences of his conviction due to deportation proceedings filed against him by the federal government. *Id.* at 973. Reid claimed:

> [T]hat, when the state's attorney requested that he enter his plea to a 'substituted charge of assault in the second degree' followed by a citation to § 53a–61, rather than § 53a–60, an ambiguity was created and thus he did not know whether this plea was to assault in the second or third

degree. This ambiguity, he contends, was exacerbated by the trial court's failure to advise him of the elements of the charge to which he was pleading.

*Id.* at 975.

Prior to pleading guilty, Reid told the judge that his attorney had reviewed the law with him "as it relates to assault in the second degree" and that he had no questions for his counsel "either about the law as it applies to this case, or the facts of [his] case." *Id.* at 975–76. The plea judge in *Reid* did not explain the elements of the crime to the defendant or ask Reid's counsel if he had done so. The *Reid* Court nevertheless held:

> Turning to the case presently before the court, we conclude that the totality of the circumstances surrounding the defendant's plea clearly indicates that the defendant understood that he was charged with, and pleaded guilty to, assault in the second degree. The short form substitute information to which he pleaded charged him with "assault second degree" in violation of *§ 53a–60*. Thus, any discussions that the defendant had with his attorney prior to the plea hearing necessarily would have been based upon this charge in the short form information. Indeed, the plea hearing began with the defense counsel representing to the court that he had explained "the offer that the court extended" to the defendant based upon that charge. <u>During that hearing, the defendant confirmed to the court that his attorney had reviewed the law with him "as it relates to assault in the second degree."</u> Moreover, despite her misstatement with respect to the statute's numerical designation, the assistant state's attorney referred to the substituted charge of assault in the second degree, and, on three separate occasions during the plea hearing, the trial court referred to assault in the second degree. When the trial court recited the maximum penalty for the charge, the penalty cited was the five year penalty for assault in the second degree, not the one year penalty for assault in the third degree. In fact, the defendant has failed to point to any evidence that would indicate that he knew that the

statutory provision cited by the state's attorney referred to assault in the third degree rather than assault in the second degree. Thus, we conclude that the defendant has not demonstrated any ambiguity on the record as to the charge to which he pleaded guilty.

Moreover, "our courts have stopped short of adopting a per se rule that notice of the true nature of the charge always requires the court to give a description of every element of the offense charged." (Internal quotation marks omitted.) *State v. Silva,* 65 Conn.App. 234, 245, 783 A.2d 7, cert. denied, *258 Conn. 929, 783 A.2d 1031 (2004[2001]).* Rather, we have held that, "under *Henderson v. Morgan, 426 U.S. 637, 647, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976),* even without an express statement by the court of the elements of the crimes charged, it is appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit. See also *Marshall v. Lonberger,* [supra, *459 U.S. 422 at 436 at 436–37, [103 S.Ct. 843 ] 74 L.Ed.2d 646 ]* (same); *Oppel v. Meachum, 851 F.2d 34, 38 (2d Cir.) (Under Henderson v. Morgan [supra, 647, 96 S.Ct. 2253 ]* it is normally presumed that the defendant is informed by his attorney of the charges against him and the elements of those charges), cert. denied, *488 U.S. 911, 109 S.Ct. 266, 102 L.Ed.2d 254 (1988).* Thus, unless a record contains some positive suggestion that the defendant's attorney had not informed the defendant of the elements of the crimes to which he was pleading guilty, the normal presumption applies." (Internal quotation marks omitted.) *State v. Lopez, 269 Conn. 799, 802, 850 A.2d 143 (2004);* accord *Bradshaw v. Stumpf, 545 U.S. 175, 125 S.Ct. 2398, 2405–2406, 162 L.Ed.2d 143 (2005)* ("We have never held that the judge must himself explain the elements of each charge to the defendant on the record. Rather, the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel. . . . Where a defendant

is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty." [Citation omitted.] ).

The defendant has not pointed to anything in the record containing a positive suggestion that his attorney failed to inform him of the elements of the crime to which he was pleading. In fact, the record shows that the defendant responded affirmatively to the trial court's inquiries as to whether defense counsel "went over the law with [him] as it relates to assault in the [second] degree" and whether the defendant had had enough time to discuss his plea with counsel. The defendant also affirmed, in response to the court's inquiry, that he had no questions for defense counsel "either about the law as it applies to [his] case, or the facts of [his] case." A court "may properly rely on ... the responses to the trial court's plea canvass...." (Internal quotation marks omitted.) *State v. Casado, 42 Conn.App. 371, 377, 680 A.2d 981, cert. denied, 239 Conn. 920, 682 A.2d 1006 (1996), citing State v. Williams, 203 Conn. 159, 170, 523 A.2d 1284 (1987).* Accordingly, we conclude that, based on the record in the present case, it is appropriate to presume that defense counsel explained the nature of the offense in sufficient detail to give the defendant notice of what he was being asked to admit.

*Id.* at 975–76(emphasis added).

The questioning of the defendant that was deemed constitutionally sufficient by the Supreme Court of Connecticut in *Reid* was, in all material respects, similar to pre-plea acceptance questioning in this case. Notably, in neither case did the plea judge either personally explain to the defendant the elements of the charges or ask the defendant's counsel if he had explained the elements to his client.

The issue presented to the court in *Desrosier v. Bissonnette,* 502 F.3d 38 (1st Cir.2007), was whether the Massachusetts Supreme Judicial Court had unreasonably applied United States Supreme Court precedent when it held that Desrosier

had voluntarily entered a guilty plea to the charge of second-degree murder. *Id.* at 42. A lower court judge in Massachu-setts had earlier allowed the defendant to withdraw his plea because the plea judge "failed to discuss any of the elements of the murder charges, including intent, in his colloquy even after the defendant claimed he had a blackout" at the time the killing occurred. *Id.* The Massachusetts trial court had also concluded that Desrosier's statements at the plea hearing were "not specific enough to demonstrate that [he] was fully informed of the elements of the crime." *Id.* at 40. After the highest court in Massachusetts reversed the trial judge's decision, Desrosier filed a petition for *habeas corpus* in federal court. He was, however, unsuccessful in both the United States District Court and in his appeal to the U.S. Court of Appeals for the First Circuit. *Id.* at 41. In *Desrosier,* no one gave an on-the-record explanation to the defendant of the elements of the crime to which he pled guilty prior to accep-tance of the plea. *Id.* at 40. But Desrosier told the plea judge that he had discussed the "pros and cons" of pleading guilty with his attorney. *Id.* at 40 (emphasis omitted). The *Desrosier* Court said:

A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelli-gently.... Where a defendant pleads guilty to a crime without having been informed of the crime's elements, this standard is not met and the plea is invalid. *Bradshaw v. Stumpf,* 545 U.S. 175, 183, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005)(citing *Henderson,* 426 U.S. at 647 [96 S.Ct. 2253]). As the Appeals Court noted, this rule does not require the judge who took the plea to have explained the elements of the offense to the defendant, provided that the record adequately reflects that defense counsel did so. *Id.* The record need not, however, contain defense counsel's explicit affirmation to that effect. Even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of

what he is being asked to admit. *Henderson,* 426 U.S. at 647 [96 S.Ct. 2253].

Contrary to Desrosier's contention, the [Massachusetts] Appeals Court did not unreasonably apply these federal constitutional rules for a valid guilty plea. While the court did not invoke, by name, a 'presumption' that defense counsel had explained the elements of second-degree murder to Desrosier, its reasoning was entirely consistent with that aspect of *Henderson.* Based on Desrosier's admissions at the plea hearing that he had discussed the 'defenses' and the 'pros and cons of having a trial' with his former attorney, as well as on the attorney's testimony at the motion hearing that he and his client had 'discussed' and 'assessed everything,' the Appeals Court concluded that defense counsel had informed Desrosier of the elements of the charge of second-degree murder. *Massachusetts v. Desrosier,* 778 N.E.2d at 5–7. Given that the Supreme Court has never required defense counsel to say outright that he or she has discussed the elements of the crime with the defendant in order for a constitutionally valid plea to result—indeed, *Henderson* in applying the presumption holds to the contrary—the Appeals Court did not unreasonably apply federal law.

*Id.* at 42.

We believe that *Desrosier* and *Reid* were correctly decided and that the principles enunciated in those cases should govern the outcome of this case. Count I said in plain English that Gross was accused of having in his possession with intent to distribute 50 grams or more of crack cocaine. Prior to pleading guilty, Gross was represented by competent counsel [5] and appellant told the plea judge that he had received a copy

---

5. Joseph Vallario, Jr., has practiced law for four decades and has had extensive experience in the field of criminal law. Additionally, he has been the chairman of the Maryland House of Delegates Judiciary Committee for many years. Richard Collins, Esquire, who was present when Gross' plea was accepted, also has had very extensive experience in the field of criminal law. He became a Maryland District Court judge in 2008.

of the indictment ("charging document") and had discussed the charges and "gone over" the elements of the charges with his counsel. Under such circumstances, it was entirely proper for the court to presume that appellant knew the elements of the charge to which he agreed to plead guilty.

After oral argument in this case, this Court decided *Miller v. State,* 185 Md.App. 293, 970 A.2d 332 (2009).. That case concerns many of the same matters discussed *supra.* In *Miller* the defendant pleaded guilty to burglary in the first degree. Op. at 294, 970 A.2d 332. We treated *Miller's* timely notice of appeal as a petition for leave to appeal. We granted leave to appeal to consider the question: did the guilty plea *voir dire* establish that the (appellant) had the requisite understanding of the nature and elements of the crime of first-degree burglary? *Id.* We answered that question in the negative and vacated the plea, because the "record in the case at bar does not show that appellant was informed of the nature and elements of first-degree burglary during the plea hearing or any time after being charged." *Id.* at 315–16, 970 A.2d 332. The case at hand is distinguishable from *Miller* because Gross, in answering questions asked of him by Judge Tillerson–Adams, said that he had been provided with a copy of the indictment and had gone over the charges and the elements of the offenses in the indictment with his counsel.

We hold that when a defendant, in response to questioning by the court, says on the record that he has discussed the elements of the crime to which he is pleading guilty with his attorney, that representation is sufficient to show that the plea was knowingly entered.

### B. Failure to Advise Gross That If He Elected To Go to Trial He Would Have Been Able to Invoke His Right Against Self-incrimination.

■ Gross argues:

In *Boykin* [*v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) ], the Supreme Court stated that the waiver of the Fifth Amendment privilege against self-incrimination, which is relinquished when a defendant pleads

guilty, cannot be presumed from a silent record. 395 U.S. at 243 [89 S.Ct. 1709]. Rather, for a guilty plea to be voluntary, the record must reflect that the defendant intelligently and understandingly waived several federal constitutional rights, including his privilege against self-incrimination. *See Boykin,* 395 U.S. at 242–43, 243 n. 5[; 89 S.Ct. 1709]. *See also In re Blessen H.,* 163 Md.App. 1, 12 [877 A.2d 161] (2005) (stating that a "guilty plea ... requires a defendant's knowing and intelligent waiver of the trial-related constitutional rights," which include "privilege against compelled self-incrimination") (citing *Hersch v. Cleary[State],* 317 Md. 200, 206 [562 A.2d 1254] (1989)).

This same argument was made and rejected in *Davis v. State,* 278 Md. 103, 361 A.2d 113 (1976). In *Davis,* the defendant complained that the plea judge had failed to advise him that if he elected to stand trial he could not be compelled by the State to testify against himself. *Id.* at 107, 361 A.2d 113.

The *Davis* Court said:

As we have already pointed out, the *Boykin* decision itself was rendered in the context of a trial record totally silent with respect to whether the guilty plea was voluntary and intelligent, and thus the Supreme Court could not rule on the sufficiency of anything other than a barren record. After scrutinizing the language employed by Justice Douglas, [in *Boykin* ] we conclude that *Boykin* does not stand for the proposition that the due process clause requires state trial courts to specifically enumerate certain rights, or go through any particular litany, before accepting a defendant's guilty plea; rather, we think *Boykin* merely holds that the record must affirmatively disclose that the accused entered his confession of guilt voluntarily and understandingly. Cases decided by the Supreme Court after *Boykin* do not indicate otherwise, nor do they themselves mandate express individualized references to and waivers of the particular rights mentioned by Justice Douglas. *See generally* Bishop, *Guilty Pleas in Wisconsin,* 58 Marq.L.Rev. 631, 635 (1975). Meriting our particular attention in this regard is *Brady v.*

*United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), a case decided shortly after *Boykin* in which the Court upheld an accused's guilty plea, citing *Boykin* on the ground that it was 'voluntary' and 'intelligent.' *Id.* at 747–48, 90 S.Ct. at 1468–69. The Court in a footnote strongly intimated that the fears expressed in Justice Harlan's dissent in *Boykin* were groundless: [6]

> The requirement that a plea of guilty must be intelligent and voluntary to be valid has long been recognized.... The new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily. *Id.* at 747 n. 4, 90 S.Ct. at 1468 n. 4.
>
> Moreover, nowhere in *Brady* or the two related cases decided the same day did the Court indicate or imply that specific articulation of the three rights set forth in *Boykin* was required.

*Id.* at 114–15, 361 A.2d 113 (emphasis added).

Appellant contends, based on *Bradshaw,* that the *Davis* decision is no longer good law. We disagree. Nothing in *Bradshaw* indicates that the Court intended to expand, or re-interpret, the language used in *Boykin.* And, as mentioned, *supra,* the *Boykin* language was carefully considered in *Davis.*

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

---

**6.** The fears of Justice Harlan, to which the Court referred, were set forth by that Justice in his dissenting opinion in *Boykin,* in which he said:

> So far as one can make out from the Court's opinion, what is now in effect being held is that the prophylactic procedures of [Rule 11 of the Federal Rules of Criminal Procedure] are substantially applicable to the States as a matter of federal constitutional due process. *Id.* at 247, 89 S.Ct. at 1714.

395 U.S. at 247, 89 S.Ct. 1709 (Harlan dissenting).