18 A.3d 968

**STATE of Maryland**

v.

**Christian G. CASTELLON–GUTIERREZ.**

**No. 931, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

April 29, 2011.

634

Mary Ann Ince (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for appellant.

Lakeytria W. Felder (Paresh S. Patel, James Wyda Federal Public Defender, on the brief), Baltimore, MD, for appellee.

Panel: WOODWARD, ZARNOCH and WATTS, JJ.

WOODWARD, J.

On July 22, 2008, Christian Castellon–Gutierrez, appellee, entered a guilty plea to the charge of robbery with a dangerous weapon. The Circuit Court for Montgomery County accepted the plea and, pursuant to the plea agreement, sentenced appellee to five years' incarceration, with all but time served suspended, and one year of unsupervised probation. On December 22, 2009, appellee filed a petition for writ of error coram nobis. After a hearing on April 13, 2010, the circuit court entered an opinion and order granting appellee's petition on May 25, 2010. On June 15, 2010, the State,

appellant, filed a motion for reconsideration of the court's May 25, 2010 order and opinion, which the court denied. The State filed a timely appeal to this Court.

The State presents one question for review by this Court, which we have rephrased and divided into two questions:

1. Did the circuit court err in holding that appellee did not waive his right to file a petition for writ of error coram nobis?

2. Did the circuit court err in concluding that appellee's guilty plea did not comply with Maryland Rule 4–242?

For the reasons set forth herein, we shall answer the first question in the affirmative and accordingly, shall reverse the judgment of the circuit court. Because we determine that appellee waived his right to file a petition for writ of error coram nobis, we will not reach the second question.

## BACKGROUND

Appellee's guilty plea to the charge of robbery with a dangerous weapon arose from his actions on February 8, 2008, when several men, including appellee, approached Marvin Giovanni Flores in Seek Lane Park in Silver Spring, Maryland. One of the men pointed a knife at Flores, another man grabbed Flores' arm, and they demanded Flores' Northface jacket. When Flores took off his jacket to give to them, he dropped his black Motorola Razor cell phone, which the men also took.

After a lookout was placed, the Maryland National Park and Planning Commission police stopped three men, including appellee. The police found Flores' Northface jacket laying on the ground next to the three men. When searched, appellee had a kitchen type knife with a brown handle on his person. One of the other men had a black Motorola Razor cell phone in his jacket pocket. Subsequently, at a show-up, Flores identified appellee as "the individual who had the knife."

On July 22, 2008, after accepting appellee's guilty plea, the circuit court sentenced appellee pursuant to the plea agree-

ment to five years' incarceration, suspending all but time served, and placing appellee on one year of unsupervised probation. Appellee did not file an application for leave to appeal his conviction or sentence pursuant to Maryland Code (1974, 2006 Repl.Vol.), § 12–302(e) of the Courts and Judicial Proceedings Article.[1]

On December 22, 2009, appellee filed a petition for writ of error coram nobis. Appellee explained in the petition that he "recently pled guilty to the federal offense of unauthorized re-entry into the United States after deportation." He asserted that he was seeking a writ of error coram nobis because, with his state conviction, he faced "significant collateral conse-quences," namely, the state conviction would increase his potential federal sentence from a guideline range of 0–6 months imprisonment to 46–57 months imprisonment and from a maximum of two years to 20 years.

Appellee alleged that, at the plea hearing, the circuit court "failed to adequately inform" him of the "nature of the charge," because, according to appellee, the court did not refer to the elements of the charge, "did not describe the nature of the charge in any other manner, did not ask [appellee] if he understood the nature of the charge, and did not ask [appel-lee] or his attorney whether they had discussed the nature of the charge." Appellee also alleged that the court "failed to inform [him] of the maximum possible penalty to which he was exposed as a result of the guilty plea." Based on these grounds, appellee concluded that his guilty plea was involun-tary and requested the court to vacate his plea.

On April 9, 2010, the State filed a response to appellee's petition. The State asserted that appellee waived his right to coram nobis relief because he had been advised that he could seek leave to appeal from the judgment of his conviction and

---

1. Maryland Code (1974, 2006 Repl.Vol.), § 12–302(e) of the Courts and Judicial Proceedings Article states that an appeal is not permitted "from a final judgment entered following a plea of guilty in a circuit court. Review of such a judgment shall be sought by application for leave to appeal."

sentence, but he did not file for leave to appeal. Even if appellee had not waived his right to coram nobis relief, the State contended that appellee's claim that his plea was involuntary lacked merit, because (1) the circuit court may "assume that [defense] counsel had discussed the elements or essential nature of the crime" with appellee; and (2) appellee was informed of the maximum sentence he could have received under the plea agreement and such "advice was sufficient."

On April 13, 2010, the circuit court held a hearing on appellee's petition and received testimony from Estaban Gergely, Esq., the attorney who represented appellee at the plea hearing. On May 25, 2010, the court entered an opinion and order granting appellee's petition for writ of error coram nobis, because appellee's "plea hearing did not comport with due process and the requirements of M[aryland] Rule 4–242(c), thus rendering his plea invalid." The court also concluded that, although appellee "was advised of his right to file leave to appeal" and "did not exercise that right," he did not waive his right to challenge his conviction and sentence because his plea was not valid.

On June 15, 2010, the State filed a motion for reconsideration of the court's opinion and order granting the petition. On July 7, 2010, the court entered an order denying the State's motion for reconsideration.

The State filed a timely notice of appeal to this Court on June 23, 2010. Additional facts will be set forth below as necessary to resolve the questions presented.

## DISCUSSION

### WAIVER

At the July 22, 2008 plea hearing, during the voir dire examination, Gergely asked appellee whether he understood that (1) he was pleading guilty to robbery with a dangerous weapon; (2) the proposed plea agreement gave appellee a sentence of five years, with all but time served suspended; (3) if the judge accepted the plea agreement, appellee would be

released to an Immigration and Customs Enforcement detainer; (4) no other agreements existed as part of this plea negotiation and decision for him to admit guilt in this case; and (5) appellee did not have an obligation to plead guilty in this case. Appellee answered that he understood all of these points.

Gergely then advised appellee of the constitutional and statutory rights that he was giving up by entering a plea of guilty, as well as the possible consequences of his plea. Appellee indicated that he understood those rights and consequences. Appellee also agreed that, "[k]nowing [his] rights to have a trial, and the possible consequences of entering a guilty plea," it was "still [his] decision to enter a plea of guilty to robbery with a dangerous weapon." After confirming that appellee understood Gergely, who was communicating with him in Spanish through an interpreter, the trial court found that "[t]he plea [wa]s being entered voluntarily with full awareness of the potential consequences."

The State then presented the statement of facts and Gergely made no modifications. The trial court concluded that there was "a sufficient factual [basis] to find [appellee] guilty of robbery with a dangerous weapon" and sentenced appellee, pursuant to the plea agreement, as previously indicated. The court then stated to Gergely: "Advise him of his rights, counsel, too. Sir. You have some additional rights that your lawyer is now going to advise you of." Gergely spoke to appellee off the record.

After speaking with Gergely, appellee signed and dated a form titled "Notice to the Defendant." The form stated in relevant part:

Now that you have been sentenced, the Court would like to advise you of certain rights which are available to you concerning your conviction and sentence.

\*　　\*　　\*

**2. If you have entered a plea of guilty you do not have the right to appeal but may apply for leave to appeal to the Court of Special Appeals from a final**

**judgment entered by this Court. If you choose to do so, you must file an application with the Clerk of the Circuit Court within thirty (30) days from this date.**

\*     \*     \*

4. If you have been sentenced to a total of more than two (2) years imprisonment, you have the right to file a written request with the Court that your sentence be reviewed by a panel of three (3) Judges of this Court. You must file a request for panel review in this Court within thirty (30) days from this date.

5. You also have the right to file with the Court a written request that I modify, reduce or strike your sentence. This request must be filed within ninety (90) days from this date.

I, the above named defendant, hereby acknowledge receipt of a copy of this document.

(Emphasis added). The completed form was filed the same day, July 22, 2008.

At the April 13, 2010 hearing on appellee's petition for writ of error coram nobis, the circuit court heard testimony from Gergely, who explained that he spoke English and Spanish fluently and, throughout his representation of appellee, he spoke to appellee in Spanish and they "understood each other perfectly well." Gergely testified that, as part of his "practice," he informed appellee about the plea process, which included an explanation of (1) appellee's option to have a bench trial or jury trial, (2) the State's burden to prove its case, (3) "the possible consequences" of entering a guilty plea, and (4) the "sentencing guidelines."

Gergely also testified that he did not remember exactly what he said to appellee regarding "the appeal process when there is a guilty plea," but that it was his "habit" to discuss the Notice to the Defendant form with his clients. The State introduced the Notice to the Defendant form, which was already in the record, and examined Gergely about the form:

[THE STATE:] Did you discuss this document with your client?

[GERGELY:] Yes. Well, I can tell you based on habit. I mean, I don't have a recollection of discussing it with him but **if he's a Spanish speaker,** I heard what you said about it being off the record. So if it was off the record, I, **I might have done it myself in Spanish by translating it to him, or I might have done it [sic] English and had the interpreter translate.** Obviously, if it's on the record then I do it in English and the interpreter translates....

\* \* \*

**I always read the form to the defendant.**

[THE STATE:] Okay.

[GERGELY:] **So either I read it to him in Spanish or I read it to him in English and the interpreter translated.**

[THE STATE:] When you go over this form with your client, do you tell him the types of things that he could raise on appeal?

[GERGELY]: I mean, I read directly from the document.

(Emphasis added).

Gergely then indicated that there was never "a time in [his] representation" of appellee that he "felt that [appellee] did not understand what ... [he] and [appellee] were discussing."

During the cross-examination of Gergely, Gergely confirmed that "either I would have translated the [Notice to the Defendant] form to [appellee] or I would have ... recited it in English and the interpreter would have read it." Gergely asserted that "I would assume I would have gone over ... the four limited rights of appeal [with appellee] after [appellee] pled guilty," but he did not give a written form to appellee about the "four limited grounds for appeal."

In its opinion and order entered on May 25, 2010, the trial court found:

On the day of the Plea, the Court asked Mr. Gergely to advise [appellee] of his additional rights after sentencing. [Appellee] was given a document titled, "Notice to [the]

Defendant". Mr. Gergely testified at the *Coram Nobis* hearing that it is his normal practice to either personally read the advice of rights form to his Spanish speaking clients or to have the interpreter translate the form to the client as he reads it in English. In this instance, the transcript does not reflect which method he employed. However, the transcript indicates that there was a discussion off the record after the Court directed Mr. Gergely to advise [appellee] of his additional rights.

(Citation omitted).

The court concluded:

As a result of Mr. Gergely's testimony and [appellee]'s signature on the "Notice to [the] Defendant" form, the Court finds that [appellee] was advised of his right to file leave to appeal. [Appellee] did not exercise that right. When a plea is valid, if a Defendant fails to seek leave to appeal, he waives his right to challenge his conviction and sentence. In this instance, however, [appellee]'s plea was not valid.

### The Parties' Contentions

The State challenges the circuit court's grant of appellee's petition for writ of error coram nobis by arguing that appellee waived any claim for coram nobis relief. According to the State, the court properly found that appellee " 'was advised of his right to file leave to appeal' and 'did not exercise that right.' " The State asserts that the court, however, "declined to apply waiver" because the court concluded that "waiver applies '[w]hen a plea is valid['] and . . . [appellee]'s plea 'was not valid.' " (First alteration in original). The State contends that there is "no authority for the circuit court's novel finding in this regard," and, in fact, "applicable case authority is to the contrary." The State concludes that "there is no requirement that a guilty plea, or claim of court error, be valid for there to be a waiver of any challenge thereto."

Appellee responds that the circuit court "correctly held that [appellee] did not waive his right to challenge his conviction

and sentence." Appellee claims that the State has not established that he was "specifically advised of his appellate rights," because he was never advised, "on the open record," of his right to file an application for leave, the "limited grounds" on which he could have appealed, including his right to appeal the voluntariness of his plea, and the time limit of 30 days during which he should have filed the application for leave to appeal. Appellee further contends that, for a defendant to have waived his right to file a coram nobis petition, the defendant must have been advised prior to the court's acceptance of his guilty plea "that by pleading guilty he [wa]s giving up his appellate rights except under four limited grounds."

## Analysis

In discussing whether appellee waived his right to seek coram nobis relief, we will address (1) whether the circuit court was clearly erroneous in its factual finding that appellee was informed of his appeal rights, and (2) whether the advice provided to appellee regarding his appeal rights was sufficient for appellee to have intelligently and knowingly waived his right to seek coram nobis relief.

## A.

### Circuit Court's Factual Finding

For questions of fact, an appellate court "will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." Md. Rule 8–131(c). We have held:

> [I]f, considering the evidence produced at trial in a light most favorable to the prevailing party . . ., there is evidence to support the trial court's determination, it will not be disturbed on appeal. **Moreover, if there is any competent, material evidence to support the factual findings below, we cannot hold those findings to be clearly erroneous.**

*Beck v. Beck*, 112 Md.App. 197, 202–03, 684 A.2d 878 (1996), (ellipsis in original) (emphasis added) (quotations and altera-

tion in original omitted), *cert. denied,* 345 Md. 456, 693 A.2d
354 (1997).

In the case *sub judice,* the circuit court made a factual
finding that appellee "was advised of his right to file leave to
appeal." In its May 25, 2010 opinion and order, the court
explained that its factual finding was based on the transcript
from the plea hearing, the "Notice to the Defendant" form,
and Gergely's testimony.

The transcript from the plea hearing showed that after
appellee was sentenced, the trial court asked Gergely to advise
appellee of his additional rights, and the court informed
appellee that he had "some additional rights that [Gergely
would] now . . . advise [him] of." A discussion then took place
between Gergely and appellee off the record.

At the conclusion of the hearing, appellee signed and dated
the "Notice to the Defendant" form, which was filed the same
day. The "Notice to the Defendant" form described the three
methods available to appellee to seek review of his conviction
and sentence: (1) an application for leave to appeal to the
Court of Special Appeals; (2) a written request for his sen-
tence to be reviewed by a panel of three judges of the circuit
court; and (3) a written request that the sentencing judge
modify, reduce, or strike his sentence. Regarding his appeal
rights, the notice advised appellant that, if he entered a plea of
guilty, "you do not have the right to appeal but may apply for
leave to appeal to the Court of Special Appeals from a final
judgment entered by this Court. If you choose to do so, you
must file an application with the Clerk of the Circuit Court
within thirty (30) days from this date."

Regarding the "Notice to the Defendant" form, Gergely
testified that, based on his habit, he either read the form to
appellee in Spanish or read it to him in English and had the
interpreter translate the form. He stated: "I always read the
form to the defendant." Gergely confirmed that he "read
directly from the document," and he never felt that appellee
did not understand what was being explained to him.

We conclude that the evidence presented supported the circuit court's factual finding that appellee was informed of his right to apply for leave to appeal his conviction and sentence to the Court of Special Appeals and the time limit for exercising that right. Gergely's testimony about his habit of advising his clients about their appeal rights after a guilty plea and sentence "[wa]s relevant to prove that [his] conduct" at appellee's plea hearing "was in conformity with [Gergely's] habit or routine practice." *See* Md. Rule 5–406. Furthermore, the court found that Gergely's testimony regarding his habit and practice was credible, and we "give due regard" to the court "to judge the credibility of the witnesses." *See* Md. Rule 8–131(c). Lastly, the "Notice to the Defendant" form, which Gergely read to appellee, informed appellee of his right to apply for leave to appeal his conviction and sentence, and the time period within which such right must be exercised; and appellee acknowledged receipt of the form with his signature. Accordingly, the circuit court was not clearly erroneous in finding that appellee "was advised of his right to file leave to appeal."

## B.

### Sufficiency and Timing of Advice Regarding Appeal Rights

In its opinion, the circuit court concluded that, although appellee was properly advised of his right to apply for leave to appeal and did not exercise that right, he did not waive his right to challenge his conviction and sentence, because waiver occurs only when a plea is valid. As the State correctly points out, "there [is] no authority for the circuit court's novel finding ..., and the circuit court stated none." Furthermore, the circuit court's conclusion is contrary to the concept of waiver. When a defendant waives his right to apply for leave to appeal, he waives his right to challenge the validity of his guilty plea, which includes his right to a substantive review of his challenge. If waiver was determined by first looking at whether a plea was valid or not, the concept of waiver would

be eviscerated, because the merits of the challenge would be reviewed every time whether or not a waiver occurred. In other words, whether a waiver occurred is a separate inquiry from whether a plea was valid.

Appellee advances two main arguments to support his claim that he did not waive his right to seek coram nobis relief: (1) the "Notice to the Defendant" form was insufficient to advise him of his appeal rights because it "did not inform [him] of the four limited grounds on appeal," and (2) the "Notice to the Defendant" form was signed after appellee entered his guilty plea, thus he "was not informed of his appellate rights before entering the plea." We will address these arguments separately.

### 1.

### Was it necessary for appellee to have been advised of the "four limited grounds on appeal" in order for him to have waived his right to file for coram nobis relief?

In *Holmes v. State*, 401 Md. 429, 932 A.2d 698 (2007), the Court of Appeals recognized that "ordinary concepts of waiver apply to coram nobis petitions." *Id.* at 440, 932 A.2d 698. Quoting *Skok v. State*, 361 Md. 52, 79, 760 A.2d 647 (2000), the Court in *Holmes* stated that the "same body of law concerning waiver and final litigation of an issue ... applicable under the Maryland Post Conviction Procedure Act, Code (1957, 1996 Repl.Vol., 1999 [Cum.] Supp.), Art. 27 §§ 645A(b) through (d), shall be applicable to a coram nobis proceeding challenging a criminal conviction." 401 Md. at 440, 932 A.2d 698 (quotations omitted). The sections of the Maryland Post Conviction Procedure Act cited by the Court were recodified without substantial change in Maryland Code (2001, 2008 Repl.Vol.), § 7–106 of the Criminal Procedure Article ("C.P."). *See Holmes*, 401 Md. at 454 n. 8, 932 A.2d 698. C.P. § 7–106(b)(1)(i)(4) provides that "an allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation ... in an application for leave to appeal a conviction based on a guilty plea." If a petitioner "could have

made an allegation of error ... but did not make [the] allegation," "a rebuttable presumption" exists "that the petitioner intelligently and knowingly failed to make the allegation." C.P. § 7–106(b)(2).

The Court held:

[I]f an individual who pleads guilty, having been informed of his right to file an application for leave to appeal from his conviction and sentence, does not file such an application for leave to appeal, a rebuttable presumption arises that he has waived the right to challenge his conviction in a subsequent coram nobis proceeding. Because [the appellant] did not rebut the presumption of waiver, nor demonstrate "special circumstances" to excuse his failure to file an application for leave to appeal, his right to challenge his conviction and sentence through a writ of error coram nobis petition was waived.

*Holmes,* 401 Md. at 445–46, 932 A.2d 698.

If the defendant does not rebut the presumption of waiver or "demonstrate 'special circumstances' to excuse his failure to file an application for leave to appeal, his right to challenge his conviction and sentence through a writ of error coram nobis petition" has been waived. *Id.* at 446, 932 A.2d 698. In other words, unless a defendant can rebut the presumption or show that "special circumstances" exist, the standard for waiver under *Holmes* is whether the defendant "was informed of, and understood, his right to file an application for leave to appeal, and did not file an application for leave to appeal." *Id.* at 474–75, 932 A.2d 698.

Since *Holmes,* this Court has applied the principles of waiver articulated therein in two cases, *Gross v. State,* 186 Md.App. 320, 973 A.2d 895 (2009), and *Miller v. State,* 196 Md.App. 658, 11 A.3d 340 (2010). In *Gross,* we held that "the information given to [the appellant] in this case on the date the plea was accepted and later at the time of sentencing was not sufficient to constitute a waiver of his right to later file a petition for *coram nobis* relief." 186 Md.App. at 331, 973 A.2d 895.

Prior to the acceptance of his plea, the appellant in *Gross* was advised by the trial court that "by entering a plea of guilty you're giving up your right to a direct appeal of this case but you will have a right to ask for leave to appeal to the Court of Special Appeals." *Id.* at 328–29, 973 A.2d 895 (emphasis omitted). On a later date, after the appellant had been sentenced, the court advised the appellant as follows: "You have 30 days to appeal this sentence, 30 days to ask for a three judge panel, and 90 days to file a motion for reconsideration." *Id.* (emphasis omitted). The appellant never filed an application for leave to appeal to this Court. *Id.* at 330, 973 A.2d 895. Six years after he was sentenced, the appellant filed a petition seeking a writ of error coram nobis. *Id.* at 323, 973 A.2d 895.

In holding that the information given to the appellant was not sufficient to constitute a waiver, this Court, speaking through Judge James P. Salmon, reasoned:

Technically, appellant did not have a right to appeal "his sentence" as he was told on the date sentence was imposed. He had a right to file a[n] [application] seeking leave to appeal the conviction and sentence. *Holmes,* 401 Md. at 445–46 [932 A.2d 698]. Moreover, at no point was he told that he had thirty days to file a[n] [application] for leave to appeal.

*Id.* at 331, 973 A.2d 895 (emphasis omitted).

This Court concluded by emphasizing "the importance of telling any defendant who pleads guilty that he or she has 'thirty days from the date of sentencing to file a[n] [application] asking the Maryland Court of Special Appeals for leave to appeal the sentence and the conviction.'" *Id.* If such advisement is given and (1) the defendant does not file such application within 30 days and (2) no "special circumstances" exist, "*coram nobis* relief will be deemed waived." *Id.*

In *Miller,* on June 1, 1999, the appellant pled guilty to the charge of possessing 448 grams of cocaine with the intent to distribute. 196 Md.App. at 660, 11 A.3d 340. The circuit court accepted the appellant's plea and sentenced him the same day to five years' imprisonment without the possibility of

parole. *Id.* At the end of the guilty plea and sentencing proceeding, the circuit court advised the appellant of his appeal rights:

> THE COURT: You have 30 days from today's date, Mr. Miller, to petition a higher court, called the Court of Special Appeals.
>
> And if your application for appeal is granted, you have ten days to ask our court reporter to type out the proceeding of this plea. Do you understand that?
>
> THE [APPELLANT]: Yes, sir.
>
> THE COURT: And you have 30 days to ask a three-judge panel composed of three judges other than myself to review your sentence. They may increase your sentence, decrease it or maintain it as is. . . .
>
> Lastly, you have the right to ask me as the sentencing judge to reconsider your sentence. I cannot increase your sentence. I could not, in my opinion, decrease it because I am bound by law to impose a five-year mandatory sentence, or I can leave it the same. Do you understand your rights? And your request is to be made in 90 days.
>
> THE [APPELLANT]: Okay.

*Id.* at 683, 11 A.3d 340 (ellipsis in original). The appellant did not file an application for leave to appeal to this Court within 30 days after sentence was imposed. *Id.* at 660, 11 A.3d 340.

On June 18, 2009, the appellant filed a Petition for Writ of Error Coram Nobis. *Id.* at 661, 11 A.3d 340. In his petition, he contended, *inter alia,* that he did not "knowingly, voluntarily, and intelligently" enter his guilty plea because, relying on *Durbin v. State,* 56 Md.App. 442, 468 A.2d 145 (1983), "he was not advised, prior to acceptance of his plea, that by pleading guilty he was foregoing his right to direct appeal, and was thus limited to filing an application for leave to appeal, on four limited grounds." [2] *Id.* at 661, 680, 11 A.3d 340.

---

**2.** *Miller v. State,* 196 Md.App. 658, 659–61, 11 A.3d 340 (2010) also addressed the appellant's contention that he did not knowingly, volun-

In an opinion authored by Judge Charles E. Moylan, Jr., this Court acknowledged that the Court of Appeals in *Holmes* "was very clear with respect to the foreclosing effect of a failure to apply for leave to appeal on a subsequent coram nobis claim," in that a rebuttable presumption of waiver arises where " 'an individual who pleads guilty, having been informed of his right to file an application for leave to appeal from his conviction and sentence, does not file such an application for leave to appeal.' " *Id.* at 683–84, 11 A.3d 340 (emphasis omitted). We noted that the appellant in *Miller* "had reason to be fully aware of *Durbin* . . . , which had been on the books for 16 years," and yet did not apply for leave to appeal on that basis. *Id.* at 683, 11 A.3d 340. Thus the appellant did not allege any "special circumstances" to excuse his failure to file an application for leave to appeal. *Id.* at 684, 11 A.3d 340. Because the appellant had been informed of his appeal rights and failed to apply for leave to appeal within the 30 day time period, this Court concluded that the appellant's right to seek coram nobis relief on the *Durbin* issue "was conclusively waived." *Id.* at 683–84, 11 A.3d 340.

In none of the cases that we have discussed, *Holmes, Gross,* and *Miller,* was there the requirement that the defendant be informed after sentencing of his "four limited grounds" for appeal in order for the defendant to be found to have waived his right to seek coram nobis relief. Appellant in the instant case has not cited any authority for such proposition, nor have we found any. Therefore, we hold that the advice of appellate rights that must be given to a defendant after sentencing in order to support a finding of a waiver of the defendant's right to later file a petition for coram nobis relief does not include informing the defendant of the "four

---

tarily, and intelligently tender his guilty plea because "he was not advised of the immigration consequences attendant to his plea" pursuant to *Padilla v. Kentucky*, —— U.S. ——, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). We held that the appellant had not waived his right to petition for coram nobis relief on the issue decided by *Padilla* because he "had no reason to anticipate the *Padilla* . . . decision that was eleven years in the future." *Id.* at 683, 11 A.3d 340.

limited grounds" upon which to apply for leave to appeal to this Court can be based.

■ As was stated in *Holmes*, and expounded upon in *Gross*, a defendant who pleads guilty only has to be told that he or she has 30 days from the date of sentencing to file an application seeking leave to appeal the sentence and conviction to the Court of Special Appeals. *See Holmes*, 401 Md. at 445–46, 932 A.2d 698; *Gross*, 186 Md.App. at 331, 973 A.2d 895; *Miller*, 196 Md.App. at 683–84, 11 A.3d 340. Accordingly, the advice of appeal rights given to appellee in the case *sub judice* was sufficient to support a finding of a waiver of his right to petition for coram nobis relief. Because he did not file an application for leave to appeal to this Court within 30 days after the date of sentencing, appellee waived his right to file a petition for coram nobis relief challenging his conviction and sentence.

■ We also conclude that appellee did not demonstrate any "special circumstances" to excuse his failure to file an application for leave to appeal. *See Holmes*, 401 Md. at 446, 932 A.2d 698. In his petition for writ of error coram nobis, appellee argued that his guilty plea was "involuntary" because he had not been informed of the "elements of the charge, . . . the nature of the charge[,] . . . [or] of the maximum possible penalty to which he was exposed as a result of the guilty plea." He further claimed that the trial court never asked him whether he understood the nature of the charge or whether his attorney had discussed the nature of the charge with him.

As in *Miller*, appellee "had reason to be fully aware" of the claims of error in his petition during the time period in which he could have applied for leave to appeal. *See* 196 Md.App. at 683, 11 A.3d 340. The defects claimed by appellee—that he was not informed of the elements of, the nature of, or the maximum possible penalty of the charge—all arose from Maryland case law or a Maryland Rule that existed prior to appellee's plea hearing in 2008. At that time, Maryland Rule 4–242(c) provided that "[t]he court may accept a plea of guilty only after it determines . . . that [ ] the defendant is pleading

voluntarily, with understanding of the nature of the charge and the consequences of the plea." Regarding the "nature of the charge," in *Abrams v. State*, 176 Md.App. 600, 933 A.2d 887 (2007), this Court stated that "the trial judge must either (1) explain to the defendant on the record the nature of the charge and the elements of the crime, or (2) obtain on the record a representation by defense counsel that the defendant has been 'properly informed of the nature and elements of the charge to which he [or she] is pleading guilty.'" *Id.* at 623, 933 A.2d 887. Regarding the "consequences of the plea," in *Bryant v. State*, 47 Md.App. 551, 424 A.2d 1115 (1981), this Court held that "the court, before accepting a plea of guilty, is required to inform the defendant of the maximum sentence he may receive as a consequence thereof." *Id.* at 556–57, 424 A.2d 1115. Thus appellee had reason to be aware of the errors claimed in his petition at the time that he entered his guilty plea and had the opportunity to challenge such errors prior to the expiration of the timeframe in which appellee could have filed an application for leave to appeal to this Court. Therefore, any challenge to the voluntariness of appellee's guilty plea based on the errors set forth in appellee's petition for coram nobis relief were "conclusively waived." *See Miller*, 196 Md.App. at 683, 11 A.3d 340.

### 2.

### Was it necessary for appellee to be advised of his appeal rights before entering his guilty plea in order for him to have waived his right to file for coram nobis relief?

■ Appellee argues that he did not waive his right to file for coram nobis relief because "he was not informed of his appellate rights before entering the plea." Specifically, appellee relies on *Holmes,* to argue that, "a rebuttable presumption that one has waived his right to file a coram nobis petition only arises if *before accepting the guilty plea,* the defendant has been advised, on the open record, that by pleading guilty he is giving up his appellate rights except under four limited grounds." (Emphasis added).

In *Holmes,* at the plea hearing prior to the trial court's acceptance of the appellant's guilty plea, the appellant's counsel advised the appellant of the "four grounds" from which the appellant could apply for leave to appeal:

> If the higher court should grant that permission, it could only hear an appeal on four grounds. One ground would be whether or not this court had the power to hear this case. The second ground would be whether the sentence given to you by the judge was a legal sentence. The third ground would be whether you have been adequately represented by your attorney.
>
>            *      *      *
>
> The final ground would be whether the plea was entered into freely and voluntarily.

*Holmes,* 401 Md. at 435, 932 A.2d 698.

After the completion of the voir dire in *Holmes,* the trial court found the appellant's "plea was entered knowingly and voluntarily, heard the statement of facts from the State's Attorney, accepted [the appellant's] guilty plea, and sentenced [the appellant]." *Id.* Thereafter, the appellant's counsel advised the appellant

> of his right to file an application for leave to appeal his conviction and that such an application must be filed in writing and within thirty days:
>
>            *      *      *
>
> Let me advise each of you your rights at this time. Gentlemen, you each have your right to ask for permission to make an appeal to the Court of Special Appeals of Maryland. If you want to ask for that permission, you have to do it in writing within thirty days from today.

*Id.* at 437, 932 A.2d 698.

Although the appellant in *Holmes* was informed of the "four grounds" from which he could apply for leave to appeal before the acceptance of his guilty plea, the Court did not hold that such advisement was required in order to find waiver.

Whether appellee was advised of his appeal rights prior to the entry of a guilty plea goes to the voluntariness of the plea, and not to the issue of waiver. In *Miller*, the appellant argued that the failure of the trial court to advise him of his appeal rights *before* the court accepted his guilty plea rendered his guilty plea involuntary. 196 Md.App. at 680, 11 A.3d 340. Although we saw no merit in this contention, we did refer to dicta in *Durbin* where we said that the "better practice" would be to advise a defendant that the right to appeal no longer existed, because "[t]he non-availability of that former statutory right [to appeal], and its replacement by the discretionary application for leave to appeal is a consequence of a guilty plea of which we think a defendant should be informed when deciding whether to plead guilty." *Id.* (quotations omitted) (quoting *Durbin,* 56 Md.App. at 449, 468 A.2d 145). In other words, a defendant's knowledge of his or her appeal rights prior to entering his guilty plea affects, if at all, the issue of whether a guilty plea was voluntarily entered.

■ As was stated by the Court of Appeals in *Holmes,* the rebuttable presumption of a waiver of the right to challenge a conviction in a subsequent coram nobis proceeding starts with advising the defendant of his or her right to file an application for leave to appeal "from his conviction and sentence." 401 Md. at 445–46, 932 A.2d 698. Such advice must be given after the guilty plea is accepted and the sentence is imposed, because the right to bring any challenge to the conviction and/or sentence in the appellate court does not accrue until that time. *See Chmurny v. State,* 392 Md. 159, 167, 896 A.2d 354 (2006); *accord Johnson v. State,* 142 Md.App. 172, 201–02, 788 A.2d 678 ("In a criminal case, a final judgment is not rendered until the court has entered a verdict and a sentence. In a criminal case, a final judgment consists of a verdict and either the pronouncement of sentence or the suspension of its imposition or execution.") (internal quotations and citations omitted), *cert. denied,* 369 Md. 180, 798 A.2d 552 (2002). Similarly, we have said that the defendant must be told that the 30 day time period for filing an application for leave to appeal begins on the date of sentencing. *See Gross,* 186

Md.App. at 331, 973 A.2d 895. To advise a defendant of such time limit prior to the sentencing date, which may be days or months later, is not consistent with the concept of waiver, which is based in part on a failure to exercise a right when one has a right to exercise that right. Therefore, we conclude that the failure to inform a defendant of his or her appeal rights prior to the entry of a guilty plea has no effect on whether the defendant waived the right to file a petition for coram nobis relief challenging the conviction and sentence arising out of a guilty plea. Accordingly, our conclusion in the instant case that appellee waived his right to file a petition for a writ of error coram nobis stands.

Because appellee waived his right to challenge his conviction and sentence in a petition for writ of error coram nobis, we need not address whether his guilty plea conformed with due process and Maryland Rule 4–242.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED; APPELLEE TO PAY COSTS.**

